FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
Greenville Division

MAY 0 6 2005

ARLEN B. COYLE, CLERK
BY _____
Deputy

| | | |
|---|---|---|
| Estate of Mitzi, | ) | C.A. No. 4:05CV114·D·B |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| American Health Centers, Inc., | ) | **COMPLAINT** |
| AmMed, Inc., James M. Smith, Jeffery | ) | **(Jury Trial Demanded)** |
| Parrish, Esq. and Melissa M. Brown, | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

I. INTRODUCTION...................................................................3

II. JURISDICTION AND VENUE...................................................4

III. PARTIES.........................................................................4
    A. Plaintiff ....................................................................4
    B. Individual Defendants ....................................................4
    C. Corporate Defendants....................................................5
    D. Other Parties.............................................................6

IV. RELEVANT PERIODS OF TIME...............................................6

V. THE UNLAWFUL SCHEME.....................................................7

VI. FACTS COMMON TO ALL CLAIMS..........................................7

VII.   Facts Relevant To The § 1964 Claims.......................................12
    A. The AHC-AmMed-Dunn Medical Section 1962(b) Enterprise.........13
        a. Purpose of the Enterprise.........................................13
            i. Lawful Purposes.........................................13
            ii. Unlawful Purposes.....................................13
        b. Membership in AHC-AmMed-Dunn Medical Section
            1962(b) Enterprise.............................................14
        c. Structure of AHC-AmMed-Dunn Medical Section
            1962(b) Enterprise.............................................14
            i. Planning..................................................15
            ii. Development.............................................15

iii. Acquisition, Maintenance and Control of the AHC-
   -AmMed-Dunn Medical Section 1962(b) Enterprise
   ThroughUnlawful Conduct.................................15
iv. Coordination Among the Defendant Co-Conspirators
   Within the Enterprise.......................................16
v. Unlawful Profit................................................16
d. Distinction Between AHC-AmMed-Dunn Medical Section
   1962 (b)Enterprise and Pattern of Unlawful Activity......   17
e. Continuity of AHC-AmMed-Dunn Medical Section
   1962(b) Enterprise.............................................   17
f. Culpability of Members AHC-AmMed-Dunn Medical
   Section 1962(b) Enterprise........................................17
B. Unlawful Activity.................................................................18
1. Mail and Wire Fraud: Unlawfully Obtaining Money or Property Under
   False Pretenses In Violation of 18 U.S.C. §§ 1341, 1343 and
   1961(1)....................................................................19
2. Deprivation of Honest Services Mail and Wire Fraud: Unlawfully
   Depriving a Citizen of Honest Services In Violation of 18 U.S.C.
   §§ 1341 and 1346, 1343 and 1346, and 1961(1).......................19
3. Unlawfully Extorting Property In Violation of 18 U.S.C. §§ 1951(b)(2)
   and 1961(1)...................................................................20
4. Unlawfully Traveling In Interstate Commerce to Commit Mail Fraud,
   Wire Fraud and Extortion in Violation of 18 U.S.C. §§ 1952(a) and
   1961(1)........................................................................20
D. Pattern................................................................................20

VIII. CLAIMS FOR RELIEF...................................................................21
1. Count I:   Violation of 18 U.S.C. §1962 (b) (All Defendants).................21
2. Count II:  Violation of 18 U.S.C. §1962(d) and (b) (conspiracy) (All
             Defendants).....................................................................23
3. Count III: Civil Conspiracy....................................................... 24
4. Count IV: Conspiracy to Breach Fiduciary Duties.............................25
5. Count V:  Negligence................................................................26
6. Count VI: Unjust Enrichment.....................................................27
7. Count VII: Permanent Injunctive Relief, Including Injunctive Relief
             Pursuant to 18 U.S.C.§ 1964(a)....................... .................28

IX. JURY DEMAND..........................................................................29

X. PRAYER FOR RELIEF................................................................ .......29

2

## I. INTRODUCTION

1. This Complaint against American Health Centers, Inc., ("AHC"), AmMed, Inc. ("AmMed"), James M. Smith, Jeffery Parrish, Esq. and Melissa M. Brown ("Defendants"), is brought on behalf of the Estate of Mitzi Dunn ("Mitzi Dunn"). The Defendants, at the direct expense of Mitzi Dunn, have engaged in a pattern of unlawful conduct in which they placed their own financial and business interests over Mitzi Dunn by breaching and conspiring to breach the fiduciary duty and special relationship of trust owed Mitzi Dunn to act in her best financial interests in the sale of Dunn Medical, Inc., Selma Ancillary Services, Inc. and Cahaba Medical (collectively referred to as "Dunn Medical"), all companies in which Mitzi Dunn owned 100% of the stock and assets. The unlawful conduct complained of herein occurred prior to Mitzi Dunn's death on September 19, 2003. The Estate of Mitzi Dunn, therefore, pleads federal claims for relief on behalf of Mitzi Dunn under the Racketeer Influenced Corrupt Organizations Act, Pub. L. 91-452, 84 Stat. 922, codified at 18 U.S.C. § 1961, *et seq.* The Estate of Mitzi Dunn pleads state claims for relief under the common law for the State of Mississippi. The Estate of Mitzi Dunn seeks monetary damages for Defendants' injury to Mitzi Dunn's business and property and seeks equitable relief to prevent Defendants from engaging in such further unlawful conduct and for disgorgement of all unlawful proceeds Defendants have obtained as a result of such unlawful conduct. The Estate of Mitzi Dunn seeks final injuctive relief, including permanent injunctions and other orders for disgorgement of unlawful proceeds, and legal relief, including actual, treble and punitive damages, pre- and post-judgment interest, costs and attorneys' fees.

## II. JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 18 U.S.C. §§ 1964(a) and (c) and 28 U.S.C. §§ 1331 (federal), 1337(commerce), and 1367(a) (supplemental). Jurisdiction exists as to these supplemental claims, since they are so related to the federal claims that they form part of the same case or controversy.

3.     Personal jurisdiction and venue is proper in this Court under 18 U.S.C. § 1965 (a) and 28 U.S.C. § 1391(b) because the interests of justice and a substantial part of the events giving rise to these claims occurred and continues to occur in this district.

## III. THE PARTIES

### A. Plaintiffs

4.     The Estate of Mitzi Dunn brings this action on behalf of Mitzi Dunn and her estate ("Plaintiff" or "Mitzi Dunn").

5.     Plaintiff has been subjected to the unlawful conduct alleged herein, which has proximately caused injury to her business and property.

### B. Individual Defendants

6.     Defendant James M. Smith is president and Chief Executive Officer of American Health Centers, Inc., the parent of a number of healthcare related subsidiaries and affiliates, including AmMed, Inc. Defendant Smith's office is located at 52 West Eighth Street, Parsons, TN 38363. As President and Chief Executive Officer of American Health Centers, Inc., Defendant James M. Smith actively engaged and facilitated the unlawful conduct alleged herein and is and was ultimately responsible for the actions of American Health Centers, Inc., AmMed and his employees and agents.

7.     Defendant Jeffery Parrish, at all relevant times herein, was and is General Counsel of American Health Centers, Inc. Defendant Parrish's office is located at 52 West Eighth Street, Parsons, TN 38363. Defendant Parrish actively engaged in and facilitated the unlawful conduct against Mitzi Dunn forming the basis of this action and coordinated the wrongdoing injuring Mitzi Dunn in her business and property with Defendants Smith and Brown.

8.     Defendant Melissa Brown was initially an independent contractor of Great Western Business Services, Inc. ("Great Western"). Defendant Brown, at all relevant times herein, had a fiduciary relationship and special relationship of trust to advise Mitzi Dunn and act on her behalf in all matters related to the listing and sale of Dunn Medical, Inc., Selma Ancillary Services, Inc. and Cahaba Medical. Defendant Brown actively engaged in and facilitated the unlawful conduct forming the basis of this action and coordinated the wrongdoing injuring Mitzi Dunn in her business and property with Defendants Parrish and Smith.

9.     The above defendants are hereinafter collectively referred to as the "Individual Defendants."

### C. Corporate Defendants

10.     Defendant American Health Centers, Inc. is a health care and medical services company organized and incorporated under the laws of Tennessee. AHC is the parent of AmMed, Inc., and various other healthcare and medical service subsidiaries. Through its operations and subsidiaries, AHC provides a diversified range of healthcare and medical services, including ownership of nursing homes in several states and the

provision of durable medical equipment and services through AmMed in several states. AHC is headquartered at 52 West Eighth Street, Parsons, TN 38363.

11.    Defendant AmMed, Inc. is a durable medical equipment and medical services company organized and incorporated under the laws of Tennessee. AmMed is a subsidiary of AHC offering a wide selection of durable medical equipment and a broad range of medical services to home health care patients in several states in the Southeastern United States. AmMed was created and incorporated for purposes of purchasing Dunn Medical, Inc., Selma Ancillary Services, Inc. and Cahaba Medical, as unlawfully coordinated by Defendants AHC, James M. Smith, Jeffery Parrish and Melissa Brown.

12.    AHC and AmMed are hereinafter referred to as the Corporate Defendants.

13.    The Individual Defendants and the Corporate Defendants are hereinafter collectively referred to as the "Defendants."

### D. Other Parties

14.    The named Defendants have been assisted by numerous, but currently unknown persons in their unlawful conduct; these persons include, but are not limited to, other corporate and/or individual co-conspirators, including various directors, officers or agents of AHC and AmMed. These unknown persons and/or corporate entities may be joined in this litigation as named parties when the Plaintiff knows their identities. The identities of these unknown defendants will be revealed in discovery.

### IV.  RELEVANT TIME PERIOD

15.    Defendants have been and continue to be engaged in the illegal conduct alleged herein, at least from May 7, 2001, or shortly thereafter to present.

## V. THE UNLAWFUL SCHEME

16.      Defendants Smith, Parrish, Brown, AHC and AmMed engaged in a

scheme to defraud Mitzi Dunn of money or property and to deprive her of honest services

related to her fiduciary relationship and special relationship of trust with Defendant

Brown. Defendants, for their own self-interest and financial gain, engaged in and

conspired to engage in a fraudulent, dishonest and extortionate scheme to exploit

Defendant Brown's relationship with Mitzi Dunn in order that they could fraudulently,

dishonestly and extortionately acquire Dunn Medical, Inc., Selma Ancillary Services,

Inc., and Cahaba Medical for millions of dollars less than the value and  price of the

companies Mitzi Dunn had entrusted to Defendant Brown to determine, list and market

for sale.  As alleged herein, Defendants' unlawful conduct constitutes civil RICO

violations in which they engaged in and conspired to engage in acquiring, maintaining

and controlling Dunn Medical through a pattern of racketeering activity.

## VI.  FACTS COMMON TO ALL CLAIMS

17.      In April of 2001, Defendant Melissa Brown was an independent contractor

with Great Western Business Services, Inc., located in Dallas, Texas.  Defendant Brown

and Great Western engaged in business services to list business properties for sale and to

provide business owner marketing services for such sales.

18.      The services offered by Great Western and Defendant Melissa Brown also

included, but were not limited to, providing a business analysis and financial evaluation

to determine the value of the companies to be listed for sale, along with a suggested range

of sales prices.

19.      Based upon a lead Defendant Brown picked up through a business

engagement on behalf of Great Western in Selma, Alabama, in early April of 2001, Defendant Brown arranged an appointment with Plaintiff Mitzi Dunn to offer her services on Mitzi Dunn's behalf along with Great Western to determine an appropriate business value rage and price for Dunn Medical, Selma Ancillary and Cahaba Medical, and to list and assist in marketing the companies for sale.

20.   Defendant Brown also personally befriended Mitzi Dunn over the next several weeks and months prior to the sale of her companies, and Defendant Brown openly acknowledged and engaged in a fiduciary and special relationship of trust owed to Mitzi Dunn and other key company executives and employees regarding listing and marketing the companies for sale.

21.   Defendant Brown worked closely with Mitzi Dunn and other key company executives and employees to arrive at her business value range of seven million to seven-and-a-half million dollars for the companies' sale. Defendant Brown determined Mitzi Dunn's total company assets to be $4,800,000. Upon considering Defendant Brown's business value range and assets determination for the companies, along with Defendant Brown's advice for setting a sales price, Mitzi Dunn and Defendant Brown set the asking price for the companies at five million dollars.

22.   Contrary to Defendant Brown's fiduciary duties and special relationship of trust with Plaintiff Mitzi Dunn, Defendant Brown, on May 7, 2001, contacted Defendant Jeffery Parrish, General Counsel for AHC, and Defendant AHC to offer her services to Jeffery Parrish, AHC and "his organization", in exchange for special compensation arrangements.

23.   Defendant Brown indicated to Defendant Parrish of AHC on May 7, 2001,

that she would provide a further "big picture" overview of her suggested plan when they met the following Tuesday, but she also specifically proposed that should AHC decide to move forward with her proposal, she desired a leadership position with AHC as her "finders' fee." Defendant Brown further proposed that her leadership position with AHC, in exchange for her assistance in securing a "benefit" to AHC, Defendant Parrish and "his organization" from purchasing the companies, would be compensated as follows: "A. $2,500 per week for a minimum of six months B. Access to one of their many company vehicles while on-site C. $2,000 per month allowance for housing and travel expenses."

24.    Defendant Brown further indicated to Defendant Parrish and Defendant AHC that she had "formed a relationship of trust" with Mitzi Dunn and the "key personnel" at Ms. Dunn's companies, and she "posses[ed] an intimate knowledge of how the company was run."

25.    Defendant Brown also indicated the following to Defendant Parrish and Defendant AHC:

> "You know from my experience that I have been through these types of situations before first-hand and am capable of making it happen. Jeff, this is an opportunity for which I would temporarily move aside my relationship with Great Western to be part of. And, I believe that based upon my findings thus far, *it would be an excellent opportunity for both of us*." (emphasis added).

26.    Defendant Brown then indicated to Defendants Parrish and AHC that she had "taken the privilege" of drafting a Mutual Confidentiality and Non-Disclosure Agreement on Mitzi Dunn's behalf which Ms. Dunn's lawyer was reviewing, and indicated "You will be hearing from *us* on this issue" (emphasis added).

27.    Defendant Brown indicated that she would pick Defendant Parrish up at the airport in Selma the next day to discuss her plan and proposals further and left

9

numbers where she could be reached directly "if you don't want to leave a message on my voice mail."

28.    At Defendant Brown's suggestion, Defendants Parrish and Smith flew to Selma, Alabama, to meet with Defendant Brown, Mitzi Dunn and other Dunn Medical personnel.

29.    Contrary to Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn and other Dunn Medical "key personnel", Defendant Brown and Defendants Smith, Parrish, AHC and AmMed never disclosed to Mitzi Dunn or other Dunn Medical personnel the separate proposals and arrangements with Defendant Brown for her previously alleged services to and compensation from Defendants AHC, AmMed, Smith and Parrish.

30.    Subsequent to meeting with and striking agreement with Defendants Smith, Parrish, AHC, and AmMed, Defendant Brown fraudulently and dishonestly exploited her fiduciary relationship and special relationship of trust with Mitzi Dunn and other Dunn Medical personnel to deceptively ratchet down the acquisition price of Dunn Medical, Selma Ancillary and Cahaba Medical to AmMed.

31.    Defendant Brown also on behalf of and along with Defendants Smith, Parrish, AHC, and AmMed, fraudulently and dishonestly repeatedly exploited Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn and other key Dunn Medical personnel to engender fear of economic loss or loss of business in the event that Mitzi Dunn did not allow AmMed to acquire Dunn Medical for a price far lower than Defendant Brown originally advised Ms. Dunn to sell her companies for.

32.    In June of 2001, Defendants Parrish, Smith and AHC, as also coordinated

with Defendant Brown, created AmMed, Inc. as an AHC subsidiary in anticipation of acquiring Mitzi Dunn's companies to be managed, operated, maintained and controlled through AmMed and the Defendants' fraudulent and dishonest scheme.

33.    After agreeing to Defendant Brown's previously alleged undisclosed proposals to "benefit" Defendants Parrish, Smith, Brown, AHC and AmMed through the acquisition of Mitzi Dunn's companies for a distress sale price range and to "compensate" Defendant Brown for her assistance and services, the Defendants maintained a façade of conducting negotiations for acquisition of Mitzi Dunn's companies at arm's length with Defendant Brown acting on behalf of Mitzi Dunn, and Defendants Parrish and Smith conducting negotiations on behalf of AHC.  In reality, however, the Defendants conspired together to exploit and breach Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn to acquire, maintain and control Dunn through fraudulently and dishonestly manipulating and securing a distress sale's price.  In executing this fraudulent and dishonest scheme, the Defendants also extortionately exploited fear of economic loss and loss of business if Ms. Dunn did not allow AmMed to acquire, maintain and control Dunn Medical.

34.    Contrary to Defendant Brown's original business evaluation range she provided Mitzi Dunn of seven million to seven-and-a-half million dollars and an asset value of $4,800,000, the Defendants fraudulently and dishonestly exploited Defendant Brown's fiduciary relationship and special relationship of trust with Ms. Dunn to secure an asset distress sale sale's price to AmMed of $700,000 through a Purchase and Sale Agreement dated July 9, 2001.  Far different from the listing and marketing price Mitzi Dunn entrusted Defendant Brown to determine, the Purchase and Sale Agreement for

11

AmMed acquiring Mitzi Dunn's companies consisted of a $100,000 down payment, along with 60 monthly payments of $10,000.

35.     As a proximate and/or direct cause of the Defendants' fraudulent, dishonest and extortionate scheme designed to acquire, maintain, manage, operate and control Dunn Medical, Mitzi Dunn and the now the Estate of Mitzi Dunn have suffered a loss to Mitzi Dunn's business and property of a $4,300,000 difference from Defendant Brown's and Mitzi Dunn's originally agreed sales price of $5,000,000, plus all proceeds Dunn Medical has yielded AmMed and the Defendants since AmMed's July 9, 2002 acquisition of Dunn Medical through the Defendants' fraudulent, dishonest, and extortionate scheme to acquire, maintain, and control Dunn Medical.

36.     As a proximate and/or direct result of the unlawful conduct alleged herein, the Estate of Mitzi Dunn is entitled to recover threefold the above damages, along with reasonable attorney fees and court costs.

## VII.  FACTS RELEVANT TO THE § 1964 CLAIMS

### A.  The AHC-AmMed-Dunn Medical Section 1962(b) Enterprise

37.     At all relevant times, an "enterprise" existed within 18 U.S.C. § 1961(4). The "enterprise" was a Section 1962(b) enterprise, which will be referred to here as the "AHC-AmMed-Dunn Medical Section 1962(b) Enterprise." The defendant "persons" within the meaning of 18 U.S.C.§ 1961(3) and 18 U.S.C.§ 1962(b) are Individual Defendants Smith, Parrish and Brown, as well as Corporate Defendants American Health Centers, Inc. and AmMed, Inc., collectively described above as the Defendants. The AHC-AmMed-Dunn Medical Section 1962(b) Enterprise had lawful purposes, but the Defendants acquired, maintained and controlled and conspired to acquire, maintain and

control the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise through a pattern of unlawful activity. The Defendants have and continue to maintain and control the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise through the pattern of racketeering activity described herein.

### a. Purpose of AHC-AmMed-Dunn Medical Section 1962(b) Enterprise

38.    Lawful Purpose:  At all relevant times, the lawful purpose of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise was to provide durable medical equipment and related medical services in several states in the Southeastern United States.

39.    Unlawful Purpose:  At all relevant times, the unlawful purpose of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise was:

(1)    To allow the Defendants, for their own self-interest and/or financial gain, to acquire, maintain and control and to conspire to acquire, maintain and control Dunn Medical through unlawful activity, including but not limited to, exploiting and conspiring to exploit Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn and other Dunn Medical executives and personnel to acquire Dunn Medical through AmMed at a price far below the value Mitzi Dunn entrusted Defendant Brown to set for purposes of listing, marketing and selling Dunn Medical, as well as to thereby maintain and control Dunn Medical  through AmMed.

(2)    To, directly or indirectly, acquire, maintain and control the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise through a pattern of unlawful activity;

(3)    To make unlawful profits from, directly or indirectly, acquiring, maintaining and controlling the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise through a pattern of unlawful activity.

### b. Membership In the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise

40.   The membership in AHC-AmMed-Dunn Medical Section 1962(b)

Enterprise was and is as follows:

A.   American Health Centers, Inc., its subsidiaries, affiliates, members, any entities that it owns or controls and/or its representatives.

B.   AmMed, Inc., and its parents, subsidiaries, affiliates, members, any entities that it owns or controls or control it, and/or its representatvies

C.   James M. Smith, at all relevant times President and Chief Executive Officer of American Health Centers, Inc., the parent of AmMed, Inc.

D.   Jeffery Parrish, at all relevant times the General Counsel of American Health Centers, Inc., the parent of AmMed.

E.   Melissa Brown, at all relevant times the fiduciary of Mitzi Brown and other Dunn Medical executives and personnel, the independent contractor of Great Western Business Services, Inc., and the undisclosed agent and employee of American Health Centers, Inc. and AmMed.

F.   Dunn Medical, Inc., Selma Ancillary Services, Inc. and Cahaba Medical (collectively referred to as "Dunn Medical").

G.   Mitzi Dunn, President and 100% owner of the shares and assets of Dunn Medical, and all Dunn Medical officers, executives, employees, representatives and/or personnel.

### c. Structure of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise

41.   At all relevant times, the AHC-AmMed-Dunn Medical Section 1962(b)

Enterprise was and is an ongoing enterprise composed of entities and individuals with

common purposes, a continuity of structure and personnel, and a consensual decision-

making structure that was used to both encourage and affect its lawful and unlawful

purposes. The roles that were performed by the various members of the AHC-AmMed-

Dunn Medical Enterprise are described as follows:

    i.    <u>Planning</u>. At all relevant times the AHC-AmMed-Dunn Medical 1962(b) Enterprise formulated and executed a cohesive plan for acquiring durable medical equipment companies and for providing durable medical equipment and related medical services in several states in the Southeastern United States. The "mastermind" of the enterprise who led the enterprise in its planning and goals was Defendant AHC President and CEO James M. Smith. Defendant Smith led AHC to set ambitious goals for acquiring nursing homes. Subsequent to Defendant Brown's contacting Defendants AHC, Parrish and Smith, the plan for AHC's purchase of nursing homes was augmented by the Defendants' plans for acquiring durable medical equipment companies to take advantage of the unlawful "opportunity" presented to them by Defendant Brown. The "grand plan" was to create a mutually profitable synergy among the Defendants by exploiting and breaching Defendant Brown's fiduciary and special relationship of trust with Mitzi Dunn and the other Dunn Medical executives and personnel.

    ii.    <u>Development</u>. The aggressive plan to acquire, maintain and control Dunn Medical was developed through close coordination and communication among Defendants Brown, Parrish and Smith. In developing the plan the Defendants maintained a façade that Defendant Brown was operating at arms-length with Defendants Smith, Parrish and AHC as Defendant Brown dishonestly exploited her fiduciary relationship and special relationship of trust with Mitzi Dunn, Dunn Medical and its "key personnel" to acquire, maintain and control Dunn Medical. The Defendants further developed the scheme by creating Defendant AmMed to acquire, maintain and control Dunn Medical under the Defendants' management and supervision..

    iii.    <u>Acquisition, Maintenance and Control of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise Through Unlawful Conduct</u>. After developing the grand plan to acquire, maintain and control Dunn Medical, the Defendants maintained a façade of acquiring Dunn Medical through acceptable arms-length business practices. In reality, however, the Defendants, for their own self-interest and gain, executed a carefully coordinated plan in which they exploited and conspired together to exploit Defendant Brown's fiduciary relationship with Mitzi Dunn and Dunn Medical's "key personnel" to dishonestly ratchet down the price of Dunn Medical to a price $4,300,000 lower than Defendant Brown had determined appropriate through her fiduciary and trusted advice and counsel to Mitzi Dunn. The Defendants also carefully orchestrated a strategy of exploiting fear of economic loss or loss of business if Mitzi

Dunn did not allow AmMed to acquire Dunn Medical for the $700,000 price that was drastically below the price Mitzi Dunn had entrusted Defendant Brown to list and market. The Defendants were able to illicitly take advantage of the "opportunity" and "benefit" for acquiring, maintaining and controlling Dunn Medical offered by Defendant Brown, since Defendant Brown had a "relationship of trust" with Mitzi Dunn and the "key personnel" of Dunn Medical . The Defendants were, therefore, able to successfully execute their plan for acquiring, maintaining and controlling the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise through a pattern of unlawful activity.

The Defendants all mutually benefited from the pattern of unlawful activity acquiring, maintaining and controlling Dunn Medical, since AmMed was able to acquire, maintain and control Dunn Medical at a cost far less than its value determined by Mitzi Dunn's fiduciary Defendant Brown; Defendants continue to realize illicit proceeds and profits in maintaining and controlling Dunn Medical as a result of AmMed's acquisition of Dunn Medical through undisclosed fraudulent and dishonest, as well as extortionate conduct; Defendant Parrish received a bonus for the Dunn Medical acquisition; and Defendant Brown received a bonus for the Dunn Medical acquisition, as well as a post-acquisition leadership role in maintaining and controlling Dunn Medical through AmMed as she had originally proffered to Defendants Smith, Parrish and AHC.

iv.   Coordination Among the Defendant Co-Conspirators Within the Enterprise. The illegal acquisition, maintenance and control of the enterprise was extensively coordinated and the progress on the agreed illegal objectives extensively communicated among the Defendants. From the initial May 7, 2001, offer to exploit and breach her "relationship of trust" with Mitzi Dunn and "key personnel" made by Defendant Brown to Defendant Parrish and AHC, through Defendant Smith and Parrish's meetings, conversations and agreement with Defendant Brown, and throughout the acquisition and subsequent maintenance and control of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise, the Defendant have maintained and continue to maintain extensive coordination and communication.

v.   Unlawful Profit. The Defendants' pattern of unlawful conduct and the illicit proceeds and profits, described above in sub-paragraph iii., stole and converted money or property belonging to Mitzi Dunn, extorted property from Mitzi Dunn to which the Defendants are not entitled, obtained money or property from Mitzi Dunn under false pretenses, and deprived Mitzi Dunn of honest services, thereby proximately and/or directly causing a loss of business and property.

**d. Distinction Between AHC-AmMed-Dunn Medical Section 1962(b) Enterprise and Pattern of Unlawful Activity**

42. The AHC-AmMed-Dunn Medical Section 1962(b) Enterprise is separate and apart from Defendants' pattern of unlawful conduct, because the enterprise has and continues to engage in both lawful and unlawful conduct. The membership of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise has and continues to include innocent parties unaware of the Defendants' unlawful conduct.

**e. Continuity of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise**

43. The AHC-AmMed-Dunn Medical Section 1962(b) Enterprise was created on May 7, 2001, or shortly thereafter. The enterprise continues today, and it will continue into the future unless remedial action is taken by this court. It has and continues to have continuity of both structure and personnel, since many of its original members continue to be active in its maintenance and control and continue to realize illicit proceeds and profits through its operations. The Defendants have never disclosed the fraudulent, dishonest and extortionate scheme they executed and continue to execute to acquire, maintain and control Dunn Medical through a pattern of racketeering activity.

**f. Culpability of Members of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise**

44. Some of the members of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise, including each of the Defendants, acted with culpability in the acquisition of Dunn Medical and have continued to act with culpability in the maintenance and control of the enterprise. Other members of the AHC-AmMed-Dunn

Medical Section 1962(b) Enterprise have been unwitting instruments or victims of the

culpable members of the AHC-AmMed-Dunn Medical Section 1962(b) Enterprise.

## B. Unlawful Activity

45.    Defendants engaged in a pattern of unlawful activity consisting of the

following conduct:

(1)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1343 (mail and wire fraud) (mail and wire fraud defrauding or conspiring to defraud a plaintiff of money or property, including circumstances where there is a special relationship of trust);

(2)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1346, and 1343 and 1346 (mail and wire fraud depriving or conspiring to deprive a citizen of honest services)

(3)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1951(b)(2) (extortion);

(4)    Unlawful activity in violation of 18 U.S.C. 1961(1), 1952(a) (traveling in interstate commerce to attempt to and to commit mail fraud, wire fraud and extortion in violation of Travel Act).

46.    Section 1961(1) of RICO provides that "'racketeering activity' means. . .

any act which is indictable under the following provisions of Title 18 United States Code.

. . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud). . . section

1951 (relating to. . . extortion), [and] section 1952 (relating to racketeering [Travel Act])"

.    47.    In 1998, the United States Congress amended the mail and wire fraud

statutes by codifying a partial definition of the central term "scheme or artifice to

defraud." The newly created definition of a "scheme or artifice" specifically recognizes

that certain unlawful acts can also constitute mail and wire fraud violations under 18

U.S.C. §§ 1341 and 1343, respectively. The statute now reads in its entirety: "[f]or

purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to

deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1. Mail Fraud and Wire Fraud.

48.    At all relevant times alleged herein, Defendants, for the purpose of

executing and/or attempting to execute a scheme to defraud and to obtain money or

property by means of false or fraudulent pretenses, in violation of 18 U.S.C. § 1341,

placed in post offices and/or in authorized repositories for mail matter, matters and things

to be sent or delivered by the post office, and received matters and things therefrom and

knowingly caused to be delivered by mail those matters and things according to the

directions thereon or at the place at which they were directed to be delivered by the

persons to whom they were addressed, and, in violation of 18 U.S.C. § 1343, transmitted

in interstate commerce wire, and/or internet transmissions for purposes of executing the

said scheme to defraud.

### 2. Deprivation of Honest Services Mail and Wire Fraud

1.    For the purpose of executing and/or attempting to execute their scheme

or artifice to deprive another of honest services, Defendants, in violation of 18 U.S.C. §§

1341 and 1346, placed in post offices and/or authorized repositories for mail matter,

matters and things to be sent or delivered by the Postal Service, and received matters and

things therefrom and knowingly caused to be delivered by mail those matters and things

according to the directions thereon or at the place at which they were directed to be

delivered by the persons to whom they were addressed, and in violation of 18 U.S.C. §§

1343 and 1346, transmitted in interstate commerce wire, and/or internet transmissions for

purposes of executing the said scheme to defraud or artifice to deprive another of honest

services.

19

### 3. Extortion.

51.     At all relevant times alleged herein, Defendants, in violation of 18 U.S.C.

§ 1951(b)(2), for the purpose of executing and/or attempting to execute the above scheme

and artifice to defraud Plaintiff of money or property or defraud Plaintiff of money or

property by depriving Plaintiff of honest services, conspired to and attempted to and did

interfere with, obstruct, delay or effect "commerce" as the term is defined in 18 U.S.C. §

1951 and by "extortion" as defined in 18 U.S.C. § 1951(b)(2).

### 4. Travel Act Violations.

52.     During all relevant times alleged herein and in furtherance of and for the

purpose of executing the above-described scheme and artifice to defraud and deprive

Plaintiff, Defendants on numerous occasions traveled and caused others to travel in

interstate commerce in order to attempt to commit and to commit, mail fraud, wire fraud

and extortion in violation of the Travel Act, 18 U.S.C. § 1952(a).

### C. Pattern.

53.     The unlawful conduct of the "Defendants" constituted and constitutes a

pattern of unlawful activity within 18 U.S.C. §1961 (5). ("Defendants", meaning the

Individual and Corporate Defendants, as related to the defendant "persons" relative to the

AHC-AmMed-Dunn   Medical   Section   1962(b)   Enterprise.)   Defendants' conduct

constitutes a pattern, since the conduct reflects both relationship between the various acts,

and they have continued for a substantial period of time and they threaten to continue in

the future. The acts are related since they are connected to one another as part of a single

scheme to acquire, maintain and control the same or related enterprise, that is, the

American Health Centers-AmMed-Dunn Medical Section 1962(b) Enterprise. Their

continuity is established by both the repeated nature of the conduct during the relevant period of time of the scheme and the continuing threat of similar conduct likely occurring in the future.

54.    Defendants continued to reap illicit proceeds and profits from the unlawful activity.

55.    The unlawful conduct of Defendants was and is related, had the same or similar purposes, results, participants, and methods of commission and victims.

56.    The unlawful actions of Defendants was and is part of their regular way of doing business, for Defendants continued their unlawful conduct over an extensive period of time and the unlawful conduct and receipt of illicit proceeds and profits will likely continue in the future unless this Court takes remedial action.

## VIII. CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF 18 U.S.C. § 1962(b)
### (AGAINST ALL DEFENDANTS)

57.    The preceding factual statements and allegations are incorporated herein by reference.

58.    The Plaintiff is a "person" within 18 U.S.C. §§ 1961(3); 1964(c).

59.    Each Defendant is a "person" within 18 U.S.C. §§ 1961(3); 1962(b).

60.    The American Health Centers-AmMed-Dunn Medical Section 1962(b) Enterprise is an "enterprise" within 18 U.S.C. §§ 1961(4); 1962(c) and, at all relevant times, was engaged (and continues to be engaged) in activities affecting interstate commerce.

61.    The Defendants, through a pattern of racketeering activity, acquired and

maintained, directly or indirectly, an interest in and control of the enterprise within the

meaning of 18 U.S.C. §§ 1961(1); 1961(5); 1962(b), to wit:

(1)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1343 (mail and
wire fraud) (mail and wire fraud defrauding or conspiring to defraud a plaintiff
of money or property, including circumstances where there is a special
relationship of trust);

(2)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1346, and
1343 and 1346 (mail and wire fraud depriving or conspiring to deprive a citizen
of honest services)

(3)    Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1951(b)(2) (extortion);

(4)    Unlawful activity in violation of 18 U.S.C. 1961(1), 1952(a) (traveling in
interstate commerce to attempt to and to commit mail fraud, wire fraud and
extortion in violation of Travel Act).

62.    The Defendants' pattern of unlawful activity and corresponding

violations of 18 U.S.C. § 1962(b) proximately and/or directly caused the Plaintiff to

suffer injury to her business and property within 18 U.S.C. § 1964(c) by reason of their

unlawful activity within 18 U.S.C. § 1961(1). Specifically, Mitzi Dunn has and the estate

of Mitzi Dunn is suffering harm or damages in a number of ways, including but not

limited to: the loss of $4,300,000, as well as the continuing loss of illicit proceeds and

profits Defendants have and are continuing to gain as a result of the unlawful conduct

alleged herein. The damages to the business and property suffered by Plaintiff was

reasonably foreseeable by the Defendants and/or was anticipated as a natural

consequence of their pattern of unlawful activity.

63.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold

the damages sustained by reason of the Defendants' violation of 18 U.S.C. § 1962(b),

along with reasonable attorney fees and court costs.

## COUNT II: VIOLATION OF 18 U.S.C. § 1962(d) BY CONSPIRACY
## TO VIOLATE 18 U.S.C. § 1962(b)
### (AGAINST ALL DEFENDANTS)

64.   The preceding factual statements and allegations are incorporated herein by reference.

65.   The Plaintiff is a "person" within 18 U.S.C. §§ 1961(3); 1964(c).

66.   The Defendants are "persons" within 18 U.S.C. §§ 1961(3); 1962(b); and 1962(d).

67.   The American Health Centers-AmMed-Dunn Medical Section 1962(b) Enterprise constitutes an "enterprise" within 18 U.S.C. 1961(4); 1962(b); and 1962(d) and, at all relevant times, was engaged (and continues to be engaged) in activities affecting interstate commerce.

68.   The Defendants conspired among themselves (and possibly other persons and entities) within 18 U.S.C.. § 1962(d) to violate 18 U.S.C. § 1962(b); that is, the Defendants conspired to acquire and maintain, directly or indirectly, an interest in and control of the American Health Centers-AmMed-Dunn Medical Enterprise through a pattern of unlawful activity within 18 U.S.C. §§ 1961(1); 1961(5); and 1962(b), to wit:

(1)   Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1343 (mail and wire fraud) (mail and wire fraud defrauding or conspiring to defraud a plaintiff of money or property, including circumstances where there is a special relationship of trust);

(2)   unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1341 and 1346, and 1343 and 1346 (mail and wire fraud depriving or conspiring to deprive a citizen of honest service

(3)   Unlawful activity in violation of 18 U.S.C. §§ 1961(1), 1951(b)(2) (extortion);

(4)   Unlawful activity in violation of 18 U.S.C. 1961(1), 1952(a) (traveling in interstate commerce to attempt to and to commit mail fraud, wire fraud and extortion in violation of Travel Act).

69.   The Defendants' pattern of unlawful activity and corresponding violations of

18 U.S.C. § 1962(d) proximately and/or directly caused the Plaintiff to suffer injury to her business and property within 18 U.S.C. § 1964(c) by reason of their unlawful activity within 18 U.S.C. § 1961(1). Specifically, Mitzi Dunn has and the Estate of Mitzi Dunn is suffering harm or damages in a number of ways, including but not limited to: the loss of $4,300,000, as well as the continuing loss of illicit proceeds and profits Defendants have and are continuing to gain as a result of the unlawful conduct alleged herein.

70.    Pursuant to 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold the damages sustained by the Defendants' violation of 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(b), along with reasonable attorney fees and court costs.

## COUNT III:  CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

71.    The preceding factual statements and allegations are incorporated herein by reference.

72.    Defendants have conspired among themselves to obtain under false pretenses, steal and convert the money or property of the Plaintiff for their own self-interest and/or financial gain.    .

73.    Defendants have conspired among themselves to commit the aforementioned acts alleged herein and Plaintiff alleges that each and every such co-conspirator is jointly and severally liable to the Plaintiff.

74.    The Defendants, while feigning appropriate arms-length business practices between Defendants AHC, AmMed, Smith, Parrish and Mitzi Dunn's fiduciary representative Defendant Brown, in fact, conspired together to exploit Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn to

acquire her companies at a price far below the value Mitzi Dunn entrusted Defendant Brown to set for purposes of listing, marketing and selling the companies, and to derive unlawful proceeds and profits from the unlawful activity purchasing Mitzi Dunn's companies.

75.     The above-stated concerted illegal acts and agreements proximately and/or directly caused special harm and damage to the Plaintiff in a number of ways, including but not limited to:  the loss of $4,300,000, as well as the continuing loss of illicit proceeds and profits the Defendants have and are continuing to gain as a result of the unlawful conduct alleged herein.

76.     The illicit agreements entered into and amongst the above named parties is a willful, wanton, and intentional conspiracy entitling the Plaintiff to an award of actual, special, and punitive damages, all costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

### COUNT IV: CONSPIRACY TO BREACJ FIDUCIARY DUTIES
### (AGAINST ALL DEFENDANTS)

77.     The preceding factual statements and allegations are incorporated herein by reference.

78.     Defendants agreed with each other to breach the fiduciary duty and special relationship of trust owed by Defendant Brown to the Plaintiff by conspiring to exploit Defendant Brown's fiduciary relationship and special relationship of trust with Mitzi Dunn and Dunn Medical's key personnel to purchase the companies at a price far below the value entrusted to Defendant Brown to set for purposes of listing, marketing

and selling the companies to derive unlawful proceeds and profits from such acquisition and the continued operation and maintenance of the companies through AmMed.

79.     The Defendants engaged in numerous overt acts in support of this conspiracy, as outlined above.

80.     As a proximate and/or direct cause of Defendants' conspiring to breach the fiduciary duties and special relationship of trust owed the Plaintiff, the Plaintiff has been harmed and damaged in a number of ways, including but not limited to: the loss of $4,300,000, as well as the continuing loss of illicit proceeds and profits the Defendants have and are continuing to gain as a result of the unlawful conduct alleged herein.

81.     The illicit agreements entered into and amongst the Defendants is a willful, wanton and intentional conspiracy to breach the fiduciary relationship owed the Plaintiff by Defendant Brown, entitling Plaintiff to an award of actual, special and punitive damages, all costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

## COUNT V: NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

82.     The preceding factual statements and allegations are incorporated herein by reference.

83.     Defendants knew or in the exercise of ordinary care should have known that their illegal and unauthorized conduct alleged herein was contrary to the interests of the Plaintiff.

84.     Defendants, each of them individually, negligently, willfully, and recklessly failed and refused to halt the illegal and unauthorized conduct alleged herein when each of them had a duty to do so.

85.    As a direct and proximate result of this negligence, gross negligence, willfulness, and recklessness of each of Defendants, the Plaintiff has been damaged as heretofore alleged, and is entitled to an award of both actual and punitive damages.

## COUNT VI:  UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

86.    The preceding factual statements and allegations are incorporated herein by reference.

87.    Defendants have unlawfully obtained millions of dollars through conduct that was intentional, negligent, careless, and committed with reckless disregard of the rights of Plaintiff through unfair, unlawful and unauthorized acts, as described above with more particularity, and it would be inequitable to permit Defendants to retain such money.

88.    Defendants would be unjustly enriched were they entitled to retain possession and/or ownership of the money (or the assets into which the money has been converted) they have obtained, and Plaintiff is entitled to the return by Defendants all of the money Defendants have received by their illegal and unauthorized conduct alleged herein, including their unjust enrichment of $4,300,000 previously alleged herein, and the unjust enrichment from the gain realized from their post-purchase continuing receipt of proceeds and profits the Defendants have and are continuing to gain as a result of the unlawful conduct alleged herein.

89.    Absent an immediate order placing such funds in escrow, the imposition of a constructive trust upon the $4,300,000, as well as Defendants' gains during the continuing post-purchase period, is mandated by Defendants' illegal and unauthorized conduct alleged herein.

90.    Absent the imposition of a constructive trust, Defendants will continue to profit and reward themselves with substantial benefits unjustly gained by their illegal and unauthorized conduct alleged herein.

## COUNT VII: PERMANENT INJUNCTIVE RELIEF
### (AGAINST ALL DEFENDANTS)

91.    The preceding factual statements and allegations are incorporated herein by reference.

92.    If Defendants are permitted to continue the above referenced actions, the Plaintiff will incur irreparable harm in the form of substantial monetary losses and loss of trust and confidence in honest services owed the Plaintiff until the Defendants are permanently restrained and enjoined by this Court from allowing the illegal and unauthorized conduct to continue to reap for them the illicit proceeds and profits alleged herein.

93.    The Plaintiff will likely succeed on the merits of this case and the balance of interests weigh heavily in the Plaintiff's favor.

94.    The Plaintiff is entitled to issuance of Final and Permanent Injunctive Relief and Orders of Disgorgement of the Proceeds of Unlawful Conduct. The actions of Defendants constitute a continuing wrongful harm to the Plaintiff that is irreparable in nature, entitling the Plaintiff to the issuance of injunctive relief prohibiting the Defendants from continuing the above referenced course of action and disgorging the Defendants of all proceeds and profits Defendants have obtained through their unlawful conduct.

95.    The injunctive relief requested herein is further based upon 18 U.S. Code § 1964(a).

## IX. JURY DEMAND

96.     The Plaintiffs and the Holders Class demand a trial by jury of any and all issues triable of right.

## X. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and the Holders Class request that Judgment be as follows:

A.     For the First Claim for Relief as to All Defendants, jointly and severally, for violation of 18 U.S.C. §1962 (b): three times actual losses and attorney fees as provided by 18 U.S.C. §1964(c), and pursuant to 18 U.S.C. § 1964(a), or other relevant law, the Plaintiff requests that Defendants be permanently enjoined from participating in the unlawful conduct alleged herein and disgorgement of all unlawful proceeds and profits;

B.     For the Second Claim for Relief as to All Defendants, jointly and severally, for violation of 18 U.S.C. §1962(d) and (b): three times actual loses and attorney fees as provided by 18 U.S.C. §1964(c), and pursuant to 18 U.S.C. § 1964(a), or other relevant law, the Plaintiff requests that Defendants be permanently enjoined from participating in the unlawful conduct alleged herein and disgorgement of all unlawful proceeds and profits;

C.     For the Third Claim for Relief as to All Defendants, jointly and severally, for Civil Conspiracy: actual, special and punitive damages;

29

D.   For the Fourth Claim for Relief as to all Defendants, jointly and severally, for Conspiracy to Breach Fiduciary Duty and Special Relationship of Trust: actual and punitive damages;

E.   For the Fifth Claim for Relief as to all Defendants, jointly and severally, for Negligence: actual and punitive damages;

F.   For the Sixth Claim for Relief as to all Defendants, jointly and severally, for Unjust Enrichment: restitution to the Plaintiff of all money Defendants unlawfully obtained or will unlawfully obtain;

G.   For the Seventh Claim for Relief, as to all Defendants, the issuance of Final and Permanent Injunctive Relief and Orders of Disgorgement of the Proceeds of Unlawful Conduct;

H.   For all causes of action listed above, all costs, disbursements and expenses, as well as reasonable attorneys' fees;

I.   For all causes of action listed above, all such other and further relief under law as this Court deems just and proper.

J.   As alleged herein, Plaintiff is, therefore, entitled to recovery of monetary damages and disgorgement of Defendants' illegal proceeds and profits in an amount to be determined at trial in excess of twenty million dollars ($20,000,000.00), along with pre- and post-judgment interest, costs, attorney fees, and all such other and further relief under law as this Court deems just and proper.

Hiram Eastland, MS Bar #5294
**EASTLAND LAW OFFICES**
610 Poplar Street
Greenwood, MS 38930
Phone: (662) 453-1227
Fax: (662) 453-2808
E-Mail: eastlandlaw@bellsouth.net

ATTORNEY FOR PLAINTIFF

≈JS 44 (Rev. 11/04)    Case 4:05-cv-00114-GHD-EMB   Document 1-4   Filed 05/06/2005   Page 1 of 1

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

Estate of Mitzi Dunn;
Dallas County (Selma, Alabama)

### DEFENDANTS

4:05cv114-D-B

American Health Centers, Inc., AmMed, Inc., James M. Smith, Jeffery Parrish, Esq., and Melissa M. Brown; Decatur County (Parsons, Tennessee)

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Hiram Eastland, EASTLAND LAW OFFICES, 610 Poplar Street, Greenwood, Mississippi 38930; 662-453-1227; 662-392-7691 (cell); eastlandlaw@bellsouth.net

Attorneys (If Known)

UNKNOWN

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [X] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 830 Patent | [ ] 810 Selective Service |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | Exchange |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | | [ ] 875 Customer Challenge |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| | | | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 740 Railway Labor Act | | Determination |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus | | [ ] 870 Taxes (U.S. Plaintiff | Under Equal Access to |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | or Defendant) | Justice |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. | [ ] 871 IRS—Third Party | State Statutes |
| | | [ ] 550 Civil Rights | Security Act | 26 USC 7609 | [ ] 890 Other Statutory Actions |
| | | [ ] 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This civil RICO action is brought under the 18 U.S.C. 1964(c). The Defendants, through a pattern of racketeering activity, knowingly breached and conspired to breach the relationship of trust owed Mitzi Dunn in the sale her companies to AmMed, Inc., a subsidiary of American Health Centers, Inc.

### VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

$20 plus Million

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

### VIII. RELATED CASE(S) IF ANY
(See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE   May 4, 2005

SIGNATURE OF ATTORNEY OF RECORD   Hiram Eastland

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____